IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL CORWIN,

                       Plaintiff,                    Case No. 3:10 CV 2163

  -vs-

                                                  MEMORANDUM   OPINION

WESLEY JAMES QUINONEZ,

                       Defendant.

KATZ, J.

     Plaintiff Michael Corwin brings this action for a declaratory judgment and accounting of profits against Defendant Wesley Quinonez.  Plaintiff seeks a declaratory judgment that he and Defendant are joint owners of thirty-one songs created during their membership in the band "Rediscover."  Further, Plaintiff contends that as joint authors, he and Defendant are co-owners of the copyrights for the songs at issue, and that he is therefore entitled to an accounting of any profits Defendant has derived therefrom.  Defendant counterclaimed for a declaration that he is the sole author and sole owner of the songs in question, and further counterclaimed for an accounting of any profits Plaintiff derived from the songs.

     The matter is currently before the Court on Defendant's motion for summary judgment as to the parties' competing requests for a declaration of authorship.  (Doc. 30).  For the reasons stated herein, Defendant's motion is granted and Plaintiff's complaint is dismissed.[1]

---

[1] Because Defendant's motion "expressly reserves any argument as to damages," *id.* at 1, Count II (Accounting) and Count III (Constructive Trust) of Defendant's third amended counterclaim remain pending.

**I. Background**

Defendant is the founder and original member of Rediscover. Defendant styles Rediscover's music as "electro-pop;" i.e., pop music that is predominately created electronically, but that may also include vocal and instrumental components. Prior to Plaintiff's membership, Defendant, as the sole member of Rediscover, had "written, produced, performed," and was selling a compact disc ("CD") album titled "The Ocean is Calling Us." (Plaintiff's Deposition, Doc. 46 at 21:10-22:11) (hereinafter, "Pl's. Dep."). Plaintiff joined Rediscover in January 2005 and remained a member through June 2008. In addition to Plaintiff and Defendant, Rediscover included band members Robert Wagner and Daaren Davis.

During Plaintiff's membership, Rediscover went on tour, had a short-lived relationship with a record label (Unborn Media Records, d/b/a One Big Spark, ( hereinafter, "One Big Spark," or "the record label")), and recorded three albums: "Out of Touch,"[2] "Call Me When You Get This,"[3] and "Sleepless Nights."[4] Additionally, a fourth album, "Lost Songs,"[5] was produced

---

[2] The "**Out of Touch**" album contains the following four songs, all of which are in dispute: "Dance Transylvania," "I Consume You," "This Place," "Your Pretty Eyes." (Doc. 51).

[3] The "**Call Me When You Get This**" album contains the following seven songs, all of which are in dispute: "Baby Got Her Gun Out," "Shake It," "Do You Think?," "My Pretty Eyes," "Standing On Edge," "I Consume You - alt. version." (Doc. 51).

[4] The "**Sleepless Nights**" album contains the following nine songs, all of which are in dispute: "Sleepless Nights," "Standing On Edge - alt. version," "Say It Like You Mean It," "Drink The Night Away," "Gorgeous," "I'm Just Like The Other Guys," "Not Invited," "Face Down," "I Will Forget You." (Doc. 51).

[5] The "**Lost Songs**" album contains the following eleven songs, all of which are in dispute: "Belmont," "Ecstacy," "Every Fucking Movie," "Hang On," "Hideout," "I'm In Love With You,"

(continued...)

sometime after Plaintiff's membership ended. Combined, these four albums include the thirty-one songs currently in dispute, as reflected by a stipulation the parties filed with the Court. (Doc. 51).

The first two albums, "Out of Touch" and "Call Me When You Get This," were both recorded in Defendant's basement studio using recording equipment and computer software provided by Defendant. "Out of Touch" was finished sometime in 2005, and "Call Me When You Get This" was finished sometime in 2006. The parties disagree about the extent of Plaintiff's input and control over the writing and recording process, but with the exception of three songs–"Dance Transylvania," "I Consume You," and "Baby Got Her Gun Out"–Plaintiff agrees that Defendant independently programed and recorded each basic electronic song using music production software called FL Studio. Once the basic song was created, Plaintiff and Defendant collaborated on how Plaintiff could perform live instrumental components on top of the basic track. For "Dance Transylvania," "I Consume You," and "Baby Got Her Gun Out," Plaintiff apparently contends that he brought the original idea for these songs to Defendant,[6] but concedes that he had no working knowledge of FL Studio during the production of the first album, and only limited knowledge during production of the second.

---

[5](...continued)
"One Eighty," "Shake," "Stuck in 1999," "Voodoo," "You Won't Be Breathing." (Doc. 51).

[6] Plaintiff does not make any specific arguments as to "Dance Transylvania," "I Consume You," or "Baby Got Her Gun Out." The Court was apprized of Plaintiff's apparent claims about the three songs only through *Defendant's* reference to portions of Plaintiff's deposition. Nowhere does Plaintiff's brief assert that Plaintiff made contributions to "Dance Transylvania," "I Consume You," or "Baby Got Her Gun Out" that were more substantial than the contributions he made to any of the other songs at issue. Instead, Plaintiff's brief only contains sweeping assertions about all thirty-one disputed songs. Similarly, Plaintiff's affidavit–which purports to enumerate the contributions Plaintiff made to each of the disputed songs–only lists contributions for eighteen songs, and does not even mention "Dance Transylvania," "I Consume You," or "Baby Got Her Gun Out." (Doc. 47-2 at ¶5).

Sometime prior to production of the third album, "Sleepless Nights," Rediscover became affiliated with the record label One Big Spark. "Sleepless Nights" was subsequently recorded with the assistance of the label.[7] In addition to pre-production work in Baltimore, Defendant again independently programed and recorded each of the basic electronic songs for "Sleepless Nights" using FL Studio. Plaintiff, Defendant, and band members Robert Wagner and Daaron Davis then traveled to Florida to finish recording the album alongside record producer Pete Thornton. As with the previous two albums, the four band members collaborated on how to add instrumental and vocal components to the already existing tracks. Moreover, Plaintiff and Defendant worked with Thornton on technical production aspects throughout recording.

At some point after the Florida recording sessions it was determined that portions of the album were unsatisfactory. It is unclear from the briefs who made this determination but, in any event, Defendant traveled to Boston to re-master the album with producers from One Big Spark. While there, Defendant re-wrote portions of songs and altered or omitted portions of the other band members' contributions, including Plaintiff's. Neither Plaintiff nor the other two band members traveled to Boston or otherwise participated in the re-mastering process, though they were aware of Defendant's activities.

At some point after the re-mastering process, Rediscover's affiliation with One Big Spark "fell apart" in 2008. Despite this, One Big Spark agreed to give the final master recordings to Rediscover for the band's use.

---

[7] Specific details regarding the nature of Rediscover's "affiliation" with One Big Spark remain unclear.

The recording process for, and Plaintiff's involvement in, the final album, "Lost Songs," is unclear, as the parties' briefs do not mention the album by name. What is clear is that Plaintiff's membership in Rediscover ended in mid-2008, apparently before "Lost Songs" was recorded. Even so, the parties' stipulation lists the "Lost Songs" album and each of its eleven songs as disputed. (Doc. 51). Moreover, Plaintiff's affidavit enumerates contributions he made to ten of the album's eleven songs.

In addition to the parties' above-described involvement in the recording process, it should be noted that several songs were registered with Broadcast Music, Inc. ("BMI"), a performance rights society that manages licensing negotiations for the music of member composers. Specifically, composers can register songs with BMI, and BMI then "negotiates blanket licenses which grant the operator of a bar, radio station, etc., the right to play any of the thousands of songs in [BMI's] stable for a fixed fee. BMI distributes 80 percent of the money received for such licenses back to the composers based on the popularity of their songs." *Broadcast Music, Inc. v. Star Amusements*, 44 F.3d 485, 486 (7th Cir. 1995). In this case, "Baby Got Her Gun Out," "Shake It," "Do You Think," and "Kiss Me" were registered with BMI in four equal shares–one share for each of Rediscover's four members–so that each band member would receive an equal portion of the royalties. It is unclear who registered these four songs, but Plaintiff stated at deposition that band member Robert Wagner was the first to begin BMI registrations, and that Defendant also registered songs.[8] (Pl's. Dep. at 140:18-141:1).

---

[8] Defendant's Counterclaim for an accounting and constructive trust of Plaintiff's profits alleges that Plaintiff registered "Dance Transylvania" and "I Consume You" with BMI. Further, the Counterclaim alleges that Plaintiff claimed the full 200% interest in the royalties for both songs (100% writer's share and 100% publisher's share). (Doc. 26 at 5-10). The motion *sub judice*,
(continued...)

Finally, on December 13, 2010–after Plaintiff filed this lawsuit– Defendant secured four copyright registrations, one for each of the four albums at issue.[9] (Doc. 31-1 at 1-12).All four registrations denote "Wesley James Quinonez, dba Rediscover" as the author and copyright claimant, and state that Quinonez dba Rediscover created the "sound recording, music, [and] lyrics" for all four albums. *Id*.

## II. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

---

[8](...continued)
however, only requests a declaration of ownership as to the thirty-one disputed songs. As explained *infra*, Plaintiff's alleged registration is not relevant to this inquiry.

[9]
The Court notes a slight discrepancy between the album titles listed in the parties' stipulation, and the "Title of Work" information listed in Defendant's copyright registrations. Specifically, whereas the parties' stipulation lists the title of Rediscover's 2006 album as "Call Me When You Get This," copyright registration SR 669-420 lists the "Title of Work"–i.e., album title–as "Shake It, et al." (Doc. 51; Doc. 31-1 at 1-3). Despite this, the songs listed in the stipulation match those listed in the copyright registration and, in any event, Plaintiff does not dispute that the copyright registrations proffered by Defendant accurately characterize and appropriately apply to the thirty-one songs at issue in this case.

Defendant filed the following four copyright registrations: SR 670-739 (for the album "Out of Touch"), SR 669-420 (for the album "Shake It, et al."), SR 670-722 (for the album "Sleepless Nights"), and SR 670-714 (for the album "Lost Songs". (Doc. 31-1 at 1-12).

*Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'"

*Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

**A. Preliminary Issues**

**1. Absence of Copyright Registration by Plaintiff**

As a threshold matter, Defendant argues that Plaintiff's lawsuit is barred by 17 U.S.C. § 411(a), which requires that "no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title." (Doc. 50 at 1). Noting that Plaintiff has failed to produce a registered copyright, Defendant contends that Plaintiff's claims must be dismissed.

Defendant's argument is inapposite, as Plaintiff did not file a copyright infringement lawsuit. Rather, Plaintiff filed a declaratory judgment claim pursuant to 28 U.S.C. § 2201 requesting a declaration that he and Defendant are joint authors of the songs in question. *See Gaimen v. McFarlane*, 360 F.3d 644, 648, 652 (7th Cir. 2004) (suit for declaration of joint authorship "is not a suit for infringement."); *see also Severe Records v. Rich*, 658 F.3d 571, 581-82 (6th Cir. 2011) (citing *Goodman*, *infra*, at 1032); *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th

Cir. 1996) (distinguishing claims of joint authorship and claims of infringement); *Goodman v. Lee*, 815 F.2d 1030, 1031-32 (5th Cir. 1987) (joint author sought declaratory judgment of joint authorship); *Brown v. Flowers*, 297 F. Supp 846, 851 (M.D.N.C. 2003), *aff'd* 2006 U.S. App. LEXIS 19055 (4th Cir. 2006) (Section 411(a) not applicable where "[plaintiff] is not bringing an infringement action . . . [but instead] alleges that the partnership had ownership rights in the songs created . . . ."). Defendant's invocation of Section 411(a) as a bar to Plaintiff's lawsuit is therefore unpersuasive.

**2. Distinction Between Sound Recordings and the Underlying Compositions**

At the outset, the Court notes that copyright law recognizes a distinction between sound recordings and the underlying composition. *BTE, ET, CIE, LLC v. Bonnecze*, 43 F. Supp. 2d 619, 627-28 (E.D.L.A. 1999). The District of New Jersey explained this distinction as follows:

> A sound recording as copyrightable subject matter must be distinguished from the copyrighted literary, musical or dramatic work embodied in the sound recording and fixed on a phonorecord. When a copyrighted song is recorded on a phonorecord, there are two separate copyrights: one on the musical composition and the other in the sound recording. The sound recording is the aggregation of the sounds captured in the recording while the song or tangible medium of expression embodied in the recording is the musical composition. Thus, the rights of an owner of a copyright in a sound recording do not extend to the song itself. A copyright in the recording and in the song are separate and distinct and by statute are treated differently.

*T.B. Harms Co. v. Jem Records, Inc.*, 655 F. Supp. 1575, 1577 n.1 (D.N.J. 1987) (internal citations omitted).

In this case, Defendant's counterclaim unambiguously seeks a declaration of sole ownership both as to the sound recordings and the underlying compositions. (Doc. 26 at ¶¶3-4). The relief sought by Plaintiff, however, is less clear. Plaintiff's Complaint refers exclusively to "the compositions," or "the musical compositions." Similarly, Plaintiff's response to Defendant's

9

motion for summary judgment refers exclusively to "the compositions" in the statement of facts section, (Doc. 47 at 3-7), and otherwise seems to use the words "song," "work," "track," and "composition" interchangeably. The exception to this is two places in which Plaintiff's brief reads: "Plaintiff states the following as his contributions to the *final recording* of the following tracks," (Doc. 47 at 7) (emphasis added), and "the evidence is on Plaintiff's favor to indicate that his contributions to *the final work* were indeed significant enough to create a joint work . . . ." *Id*. at 12 (emphasis added). Whether the Court construes Plaintiff's request as involving the sound recordings, the underlying compositions, or both is moot because, as explained below, Plaintiff is unable to establish joint authorship.

**B. Plaintiff's Assertion of Joint Authorship**

Copyright ownership of a protected work initially vests in the work's author. 17 U.S.C. § 201(a). When a work is "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole," 17 U.S.C. § 101, the authors create a "joint work," *id*., and are considered to be "joint authors." *Childress v. Taylor*, 945 F.2d 500, 505 (2d Cir. 1991). Thus, joint authors are entitled to "equal undivided interests in the whole work–in other words, each joint author has the right to use or to license the work as he or she wishes, subject only to the obligation to account to the other joint owner for any profits that are made." *Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998) (citing 17 U.S.C. § 201(a)); *Childress*, 945 F.2d at 508). Further, because joint authors own an undivided interest, they are not liable to one another for copyright infringement. *See Newman v. Crowell*, 1979 U.S. Dist. LEXIS 9343, at *4-*5 (S.D.N.Y. Oct. 4, 1979) (joint copyright owners cannot sue each other for infringement "because a copyright owner cannot infringe his own copyright.").

In an unpublished opinion, *BancTraining Video Sys. v. First Am. Corp.*, 1992 U.S. App. LEXIS 3677 (6th Cir. Mar. 3, 1992), theسixth Circuit analyzed joint authorship, but did not establish a specific test for courts to apply when determining the issue. The parties do not cite *BancTraining* or otherwise suggest what the Sixth Circuit's joint authorship test is or should be. Instead, they argue under the Second Circuit's *Childress v. Taylor* test, which requires a party claiming joint authorship to show that (1) each party intended to be joint authors, and (2) each party made an independently copyrightable contribution to the work. *See Childress v. Taylor*, *supra*, 945 F.2d at 505-06*; see also Thomson v. Larson*, *supra*, 147 F.3d 195 (refining *Childress*' joint authorship test). After examination, this Court believes *Childress* states the appropriate test for determining joint authorship.

In adopting the *Childress* test, this Court finds persuasive the Seventh Circuit's reasoning for doing so in *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061 (7th Cir. 1994). *See Erickson* at 1067-71 (*Childress* best satisfies statutory definition of joint work, *Childress*' "independently copyrightable contribution" requirement provides consistency, promotes judicial efficiency, and reinforces goals of Copyright Act, and majority of courts considering joint authorship have applied *Childress*). Moreover, this Court notes that several other district courts in the Sixth Circuit have applied *Childress* and *Erickson* when confronting claims of joint authorship. *See Downey v. Downey*, 2010 U.S. Dist. LEXIS 99828, at *5 (S.D. Ohio Aug. 26, 2010); *Tang v. Putruss*, 521 F. Supp. 2d 600, 606 (E.D. Mich. 2007); *Perry v. Herd*, 2006 U.S. Dist. LEXIS 17404, at *57 (E.D. Tenn. Feb. 14, 2006); *Balkin v. Wilson*, 863 F. Supp. 523, 528 (W.D. Mich. 1994). Therefore, this Court will apply the *Childress* test to Plaintiff's claim of joint authorship.

As explained above, *Childress* requires a party claiming joint authorship to show that (1) each party intended to be joint authors, and (2) each party made an independently copyrightable contribution to the work. 945 F.2d at 505-06. With regard to intent, it is not enough that the parties intend their contributions to be merged into "inseparable or interdependent parts of a unitary whole." *See Bonnecaze*, *supra*, 43 F. Supp. 2d at 623 (citing *Childress*, 945 F.2d at 507-08). Rather, the parties must "entertain in their minds the concept of joint authorship." *Childress*, 945 F.2d at 508; *see also Thomson*, 147 F.3d at 201 (citing *Childress*, 945 F.2d at 508) ("since coauthors are afforded equal rights in the co-authored work, the 'equal sharing of rights should be reserved for relationships in which all participants fully intend to be joint authors.'"). Further, in *Thomson v. Larson*, the Second Circuit explained that "the intention standard is not strictly subjective." 147 F.3d at 201 ("co-authorship intent does not turn solely on the parties' own words or professed state of mind."). Instead, *Childress* requires "a nuanced inquiry into the *factual indicia of ownership*," which includes decision making authority over the work, the way in which contributors bill or credit themselves for the work, control of written agreements related to the work, and any other evidence. *Id*. (emphasis added). With regard to *Childress*' second prong, a putative joint author's contribution must be independently copyrightable. *Erickson*, 13 F.3d at 1072. As such, "ideas, refinements, and suggestions, standing alone," are not sufficient. *Id*. Rather, a party asserting joint authorship must point to specific contributions that were fixed in a tangible medium. *Id*. at 1071; *see also Bonnecaze*, 43 F. Supp. 2d at 628 (ideas and insights contributed by drummer of rock band insufficient to establish joint authorship of underlying compositions, and drummer's contributions to sound recordings cannot serve as the required tangible expression for establishing joint authorship of underlying compositions).

Applying the *Childress* test to the facts of this case, the Court finds that Plaintiff is unable to establish joint authorship for failure to satisfy the first prong: a showing of intent. Plaintiff advances three substantive arguments to demonstrate Defendant's intent. **First**, several portions of Plaintiff's complaint and opposition brief claim that Defendant acknowledged Plaintiff as a joint author and co-owner:

> Defendant denies the fact that for several years Defendant acknowledged and conceded Plaintiff's 50% ownership of the Compositions. Thus there is a dispute as to this fact . . . . After being pressed by Plaintiff to share revenues from the songs, about August 2010, Defendant then repudiated Plaintiff's co-ownership by contending that Defendant was the sole owner of the Compositions. (Doc. 47, Pl's. Mem. at 5);

> In the present case Defendant Quinonez did previously acknowledge Plaintiff Corwin as a joint-author and therefore their [sic] exists an intent at the time of the writing that the parts be absorbed or combined into an integrated unit. *Id*. at 13;

> Plaintiff states in his affidavit that Quinonez had acknowledged him as a co-author *publicly* and then ceased to do so in August 2010. *Id*. at 15 (emphasis added);

> *By letters to Plaintiff and other individuals* in August 2010 and thereafter, Defendant for the first time repudiated Plaintiff's co-ownership . . . . (Doc. 1, Pl's. Compl., at ¶ 15) (emphasis added).

The only evidence Plaintiff offers in support of these unsubstantiated claims is another unsubstantiated claim; namely, his affidavit, which states that "[Defendant] acknowledged my contribution in the past. [Defendant] then repudiated my co-ownership to copywritten [sic] works in August of 2010." (Doc. 47-2 at ¶¶6-7). Such a conclusory allegation is insufficient to create a genuine dispute of fact regarding Defendant's intent to be joint authors with Plaintiff. *See Sigmon v. Appalachian Coal Props.*, 2010 U.S. App. LEXIS 19493, at \*48-\*49 (6th Cir. Sept. 17, 2010) ("While an affidavit may certainly be sufficient to establish a genuine issue of material fact . . . that is not the case if the affidavit contains only conclusory allegations and naked conclusions of law . . . ."). This is especially true given that Plaintiff claims Defendant acknowledged his joint

13

authorship status both publicly, (Doc. 47 at 15), and in letters to "other individuals," (Doc. 1 at ¶15), yet he fails to provide any evidence aside from his own conclusory affidavit. To the contrary, Defendant produced the affidavit of fellow band member, Robert Wagner, which states:

> I cannot support the allegation that [Defendant] has previously conceded a 50/50 ownership of the songs in question with [Plaintiff]. I have no knowledge of [Defendant] making any statement to that effect . . . . I cannot support the allegation that [Defendant] has sent letters to [Plaintiff] and others repudiating a 50/50 ownership of the songs in question. I have no knowledge of correspondence addressing 50/50 ownership of the songs in question.[10]

(Doc. 40-1 at p.4, ¶¶5-6). Plaintiff's baseless assertion that Defendant conceded joint authorship is therefore not persuasive.[11]

**Second**, Plaintiff claims he and Defendant shared decision making authority sufficient to demonstrate a mutual intent to be joint authors. Specifically, Plaintiff cites a portion of Defendant's deposition that describes the process by which Plaintiff recorded live instrumental components on top of Defendant's pre-recorded electronic song:

> Q: For all the songs that have lead guitar . . . you guys would have some process where you would discuss what was going to go in there?
> A: Sure.
> Q: And then the plaintiff would play what he thought was appropriate and you would hit the buttons to record it and he would play it and it would get recorded, right?
> A: Fair enough.

---

[10] Defendant also submitted the affidavit of Mike Hearst, which likewise denies knowledge of Defendant conceding joint authorship. (Doc. 40-1 at p.2, ¶¶5-6). It is unclear to the Court, however, who Mike Hearst is.

[11] The Court's analysis is not altered by Plaintiff's passing reference to *Janky v. Lake County Convention & Visitors Bureau*, 576 F.3d 356 (7th Cir. 2009). That case involved a clear concession of joint authorship–namely, plaintiff's filing of the copyright registration with defendant listed as a joint author and the song designated as a "joint work"–followed by a post-hoc excuse that the registration was simply meant to convey gratitude. *Id*. at 362.

(Doc. 45, Defendant's Deposition, at 58:3-12) (hereinafter, "Def's. Dep."). Citing this exchange, Plaintiff claims that "Defendant's own words show his intention at the time the songs were created that the parts created by Plaintiff were to be absorbed or combined into an integrated unit the song itself." (Doc. 47 at 7).

Setting aside the fact that this deposition excerpt limits Defendant's statement to a description of Plaintiff's lead guitar contributions, and that Plaintiff has claimed guitar contributions in only nineteen songs–all of which appear on the third and fourth albums only, (Doc. 47 at 7-8)–Defendant's statement does not satisfy *Childress*' intent requirement. As explained above, it is not enough that the parties intend their contributions to be merged into "inseparable or interdependent parts of a unitary whole." *See Bonnecaze*, 43 F. Supp. 2d at 623 (citing *Childress*, 945 F.2d at 507-08). The parties must "entertain in their minds the concept of joint authorship." *Childress*, 945 F.2d at 508. When reading past the excerpt cited by Plaintiff, it is clear that "Defendant's own words" do not establish that he entertained the concept of joint authorship in his mind, because Defendant's words do not describe a scenario in which he ceded control of the recordings to Plaintiff:

> Q: [The style of the lead guitar part] was within the discretion of the plaintiff, right?
> A: It was actually in the discretion of me. It was if I thought it was going to fit with the song.
> Q: Okay. Maybe that's not what I want to ask you . . . . With respect to the style of it, maybe it was your decision, I don't know, is that true?
> A: That is true. I made the final decision of what we used for the song.

(Def's. Dep. at 58:19-59:5). *See Erickson*, 13 F.3d at 1072 (no intent for joint authorship where minor suggestions made by putative joint author, but final decision belonged "entirely" to principal playwright); *cf. Janky*, 576 F.3d at 362 (sufficient joint authorship intent where putative

15

joint author "wielded considerable control over what the song finally looked like; one could even say he demanded the changes.").[12] Further, Plaintiff concedes that when Defendant traveled to Boston to re-master the "Sleepless Nights" album, Defendant re-wrote portions of songs and altered or omitted portions of the other band members' contributions, including Plaintiff's. Plaintiff further concedes that neither he nor the other two band members traveled to Boston or participated in this process. Thus, Plaintiff cannot show that he exercised decision making authority sufficient to demonstrate a mutual intent to be joint authors.

**Finally**, Plaintiff points to the band's four songs that were registered with BMI in each of the four band members' names. Plaintiff maintains that the profit sharing and mutual recognition resulting therefrom demonstrates joint authorship intent. This argument is not persuasive. Plaintiff concedes that he does not even know who registered the songs, let alone that Defendant did so contemplating that the two of them should be joint authors. Moreover, even if Defendant did register the songs, doing so in each of the four members' names hardly evinces an intent that only two of them be joint authors. Further, Plaintiff points to only four songs registered with BMI, leaving twenty-seven songs unaccounted for. Simply put, a reasonable jury could not find that the four-way registration of four songs demonstrates intent of joint authorship.

For the reasons stated above, the Court finds that Plaintiff cannot satisfy the requisite showing of intent under *Childress*' joint authorship test, and the Court therefore need not examine the "independent copyrightable contribution" prong. Moreover, Plaintiff's claim for a declaration

---

[12] The Court is aware that the Second Circuit admonished that "the intention standard is not strictly subjective. In other words, co-authorship intent does not turn solely on the parties' own words or professed state of mind." *Thomson*, 147 F.3d at 201. In this instance, however, Plaintiff limits his argument to the sufficiency of Defendants words to establish intent of joint authorship.

of joint authorship must be dismissed and, because Plaintiff's claims for an accounting and constructive trust are not cognizable without a showing of joint authorship, the remainder of Plaintiff's complaint must also be dismissed.

**C. Defendant's Assertion of Sole Authorship**

Defendant's third amended counterclaim seeks a declaratory judgment that he is the sole author of the compositions at issue, and the sole owner of the sound recordings at issue. (Doc. 23 at ¶¶3-4).

Under Section 410(a) of the Copyright Act, a copyright registration made within five years after publication of a work is *prima facie* evidence and creates a rebuttable presumption of the registration's validity and of the facts stated therein. *BancTraining*, 1992 U.S. App. LEXIS 3677, at *7-*8 (citing 17 U.S.C. § 410(a)). In this case, the copyright registrations for the "Shake It, et al.," "Sleepless Nights," and "Lost Songs" albums were made within five years. (Doc. 31-1 at 1-9). Defendant has therefore proffered *prima facie* evidence of sole authorship, and Plaintiff has failed to rebut this evidence with his assertion of joint authorship.

Defendant concedes that the copyright registration for the "Out of Touch" album was made some five and a half years after its first publication. *Id*. at 10-12. Despite this delay, "[t]he evidentiary weight to be accorded the certificate of registration made [after five years] shall be within the discretion of the court." 17 U.S.C. § 410(a). In this case, the Court finds the copyright registration, coupled with Defendant's song-by-song description of his authorship, (Doc. 30 at 14-36), satisfies Defendant's burden of demonstrating authorship, and Plaintiff again has failed to rebut this showing with his assertion of joint authorship.

In light of the above, the Court finds that Defendant is the sole author of the compositions at issue, and the sole owner of the sound recordings at issue.

**V. Conclusion**

For the reasons stated herein, Defendant's motion for summary judgment is granted. (Doc. 30). The Court hereby declares that Defendant is the sole author of the compositions at issue, and the sole owner of the sound recordings at issue (Copyright Registrations SR 670-739; SR 669-420; SR 670-722; and SR 670-714). Further, Plaintiff's complaint is dismissed. (Doc. 1). Counts II and III of Defendant's third amended counterclaim remain pending. (Doc. 23).

IT IS SO ORDERED.

             s/ *David A. Katz*
             DAVID A. KATZ
             U. S. DISTRICT JUDGE